**TALENT REPRESENTATIVES, INC., Plaintiff,**

v.

**AMERICAN FEDERATION OF TELEVISION AND RADIO ARTISTS, Defendant.**

**No. 81 Civ. 3650.**

United States District Court, S.D. New York.

June 26, 1984.

Solin & Breindel by Howard Breindel, New York City, for plaintiff.

Becker & London by Mortimer Becker, New York City, Bredhoff & Kaiser by Ronald Rosenberg, Washington, D.C., for defendant.

OPINION

MOTLEY, Chief Judge.

The Plaintiff, Talent Representatives, Inc. (TRI), has sued the defendant, the American Federation of Television and Radio Artists (AFTRA), alleging that the fee the union charges the agents it franchises violates antitrust laws. TRI now has moved for summary judgment. The motion is denied for the following reasons.

AFTRA requires that agents who represent AFTRA members become franchised by the union and pay an annual franchise fee of $50. AFTRA members are prohibited from using the services of agents who are not franchised. Agents, therefore, are required to pay the fee or remain unfranchised and unable to service AFTRA members.

This case raises an issue that was left undecided by the Supreme Court in *H.A. Artists & Associates, Inc. v. Actors' Equity Association*, 451 U.S. 704, 101 S.Ct. 2102, 68 L.Ed.2d 558 (1981). In that case, which involved essentially different parties but the same issue, the agents challenged both the franchise system as well as the fee requirement as separate alleged violations of the antitrust laws. This court

found that both the franchise and the fee were protected by the statutory labor exemption from the antitrust laws. 478 F.Supp. 496 (S.D.N.Y.1979) (CBM). The Court of Appeals for the Second Circuit affirmed the decision on both points, 622 F.2d 647 (2d Cir.1980), but the Supreme Court affirmed only with respect to the franchise system and reversed and remanded with respect to the fee. The parties in *H.A. Artists,* settled the suit after the Supreme Court's decision and the issue of the fee was never decided in that case. The present case, however, which was filed separately against a different actor's union, raises precisely the issue left undecided by *H.A. Artists:* since the fee requirement is not exempt, does it also violate the antitrust laws?

█ TRI first contends that inquiry into this issue is foreclosed by the Supreme Court's holding in *H.A. Artists* with respect to fees. It contends that the Court actually held that such a fee requirement constituted a *per se* violation of the Sherman Act. Such an interpretation of the Court's opinion, however, simply is incorrect.

It is abundantly clear that the Court went no further than the question of the application of the exemption from the antitrust laws and that it did not rule on the separate question of their violation. The Court introduced the opinion by noting that the lower courts had held that the statutory labor exemption applied to the franchise system and to the fee requirement. It then defined the issue before the Court in the following way: "[w]e granted certiorari to consider the *availability of that exemption* in the circumstances presented by this case." 451 U.S. at 706, 101 S.Ct. at 2104 (emphasis added). Notably, the Court made no mention of considering substantive violations as well.[1]

Most of the Court's opinion consisted of the reasoning underlying its holding that the franchise system was protected by the labor exemption. It limited its discussion

of the franchising fee to one paragraph which, in view of the dispute on this matter, merits quotation in full:

The question remains whether the fees that Equity levies upon the agents who apply for franchises are a permissible component of the exempt regulatory system. We have concluded that Equity's justification for these fees is inadequate. Conceding that [*Musicians v*]. *Carroll* [391 U.S. 99, 88 S.Ct. 1562, 20 L.Ed.2d 460 (1968)] did not sanction union extraction of franchise fees from agents, Equity suggests, only in the most general terms, that the fees are somehow related to the basic purposes of its regulations: elimination of wage competition, upholding of the union wage scale, and promotion of fair access to jobs. But even assuming that the fees no more than cover the costs of administering the regulatory system, this is simply another way of saying that without the fees, the union's regulatory efforts would not be subsidized—and that the dues of Equity's members would perhaps have to be increased to offset the loss of a general revenue source. If Equity did not impose these franchise fees upon the agents, there is no reason to believe that any of its legitimate interests would be affected.

451 U.S. at 722, 101 S.Ct. at 2112 (footnotes omitted). The Court did no more than answer the question of whether the fee requirement was a "permissible component of the *exempt* regulatory system." (emphasis added). While deciding that the fee component of the franchising system was not exempt from antitrust laws, in contrast to the franchising system itself, the Court did not also take the next step and hold that it was a *per se* violation.

TRI concedes that there is no express language in the opinion holding that the fee requirement was a *per se* violation, but it suggests that this court can infer such a holding. It notes that the Court in that paragraph did not expressly limit its hold-

---

1. It hardly requires comment that the fact that TRI may have presented the *per se* violation

issue in its brief to the Supreme Court does not necessarily mean that the Court decided it.

ing to the exemption issue as it could have done by reciting the rule that something which is not exempt from the antitrust laws is not necessarily in violation of them. Indeed, the Court has observed on other occasions that, "[i]t is axiomatic that conduct which is not exempt from the antitrust laws may nevertheless be perfectly legal." *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 210 n. 5, 99 S.Ct. 1067, 1072 n. 5, 59 L.Ed.2d 261, *rehearing denied*, 441 U.S. 917, 99 S.Ct. 2017, 60 L.Ed.2d 389 (1979). That proposition is so "axiomatic" by now, in fact, that this court will not venture to infer a holding that is not expressed in the opinion merely because the Supreme Court did not state the obvious.[2]

In the alternative, TRI contends that other authority supports its position that the fee constitutes a *per se* violation. It first argues that the application of the fee requirement constitutes a group boycott and therefore a *per se* violation of Section 1 of the Sherman Act:[3] Even assuming that the label "group boycott" should be applied to the fee requirement in this case, however, a finding of a *per se* violation does not necessarily follow. As the court observed in *Smith v. Pro Football, Inc.*, 593 F.2d 1173, 1180 (D.C.Cir.1978), "[t]he courts have consistently refused to invoke the boycott *per se* rule ... where the concerted activity manifested no purpose to exclude and in fact worked no exclusion of competitors." *See also United States v. Columbia Pictures Industries, Inc.*, 507 F.Supp. 412, 428 (S.D.N.Y.1980) (with respect to group boycotts, "the 'touchstone of *per se* illegality' is the 'purpose and effect of the arrangement,' particularly the presence of 'exclusionary or coercive conduct.'").[4]

TRI suggests that the "closest analogy is to price fixing cases." In an often-quoted passage contained in one of the cases cited by TRI, however, the Supreme Court has observed that under the Sherman Act, "'a combination formed *for the purpose* and *with the effect* of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate or foreign commerce is illegal per se.'" *U.S. v. Parke, Davis & Co.*, 362 U.S. 29, 47, 80 S.Ct. 503, 513, 4 L.Ed.2d 505 (1960), *quoting U.S. v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223, 60 S.Ct. 811, 844, 84 L.Ed. 1129 (1940) (emphasis added).

■ These cases make it clear that simply characterizing something as a group boycott is insufficient to establish that it constitutes a *per se* violation of the Sherman Act. Further inquiry must be made at

---

**2.** If the language of the opinion is not enough, the dissent establishes the holding beyond question. The three dissenters disagreed only with that part of the Court's opinion dealing with the fee requirement, about which they said they instead agreed with the Court of Appeals below that the fee was protected by the antitrust exemption for labor. Violation of the laws was never discussed. 451 U.S. at 723–24, 101 S.Ct. at 2113–14.

**3.** Section 1 of the Sherman Act, 15 U.S.C. § 1, provides in pertinent part:

Every contract, combination in the form of a trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal.

**4.** *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978) is not to the contrary. There, the Court was not deciding a substantive violation issue, but only one relating to a particular exception to an Act which removes the insurance industry from coverage under the federal antitrust laws and leaves it to state regulation. The Court expressly stated that it was deciding only the scope of the term "boycott" and was not concerned with the issue of whether any conduct was *per se* unlawful.

[Petitioners] cite commentary that attempts to develop a test for distinguishing the types of restraints that warrant per se invalidation from other concerted refusals to deal that are not inherently destructive of competition. But the issue before us is whether the conduct in question involves a boycott, not whether it is per se unreasonable.

438 U.S. at 542, 98 S.Ct. at 2930. Implicit in the Court's statement is that the questions of whether something is a boycott and whether that boycott is *per se* unlawful involve separate considerations. The Court's review of the cases was undertaken to examine the types of conduct which have been held to be boycotts and was not intended to suggest that all boycotts are illegal.

least into the purpose and the effect of the conduct in question.

Turning to the present motion, it is settled that summary judgment cannot be granted where there are disputes about issues of material fact. Fed.R.Civ.P. 56(c); *see e.g., Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). Furthermore, the burden of proving the absence of an issue of fact rests with the movant. *See e.g., Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 444 (2d Cir.1980). With respect to antitrust cases in particular, the Supreme Court has noted that summary judgment "should be used sparingly in complex antitrust litigation where motive and intent play leading roles...." *Poller v. Columbia Broadcasting System,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). *See also* 10A C. Wright & A. Miller, *Federal Practice and Procedure* § 2732.1 (1983).

■ The intent or purpose of the fee in this case as well as its effect clearly are material issues with respect to the Section 1 claim and they are disputed by the parties. AFTRA contends both that in imposing the franchise fee it had no intention of limiting the number of franchised agents and that the fee does not have the effect of precluding any agent from the market. *See* Defendant's Local Rule 3(g) Statement ¶¶ 1–3; Declaration of Sanford I. Wolff ¶ 3.

The same problem exists with TRI's second allegation that the franchise fee requirement violates Section 2 of the Sherman Act.[5] It argues that the imposition of the fee is an unlawful extention of AFTRA's lawful monopoly power because it restrains trade in the market of theatrical agents' services. Whether the fee requirement actually restrains trade obviously is a question of fact, but it is one about which there is no evidence at this point of the proceedings. Moreover, the allegation is disputed by AFTRA and its resolution, therefore, along with the others, must await trial.

In addition to there being disputed issues of material fact in this case, TRI has failed to support the contentions in its motion with appropriate evidence. Nothing more than the fact of the fee requirement in the franchise system was presented with respect to intent or market effect except for general, conclusory allegations and labels. Mere allegations of group boycott or restraint of trade are plainly insufficient as a basis for summary judgment for plaintiff in this case.

For the foregoing reasons, TRI's motion for summary judgment is denied.

Plaintiff has requested that the issue of whether the fee requirement constitutes a per se violation of the Sherman Act be certified for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). That section provides that the district court may permit such an appeal where its order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation...." TRI, however, has not called to the attention of the court a single case which holds or even suggests that it would be appropriate on a plaintiff's motion for summary judgment to hold that conduct is *per se* in violation of the Sherman Act without first inquiring into the purpose or effect of that conduct where those matters are in dispute. Therefore, TRI has not established any substantial ground for difference of opinion with the court.

---

**5.** Section 2 of the Sherman Act, 15 U.S.C. § 2, provides in pertinent part:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony....